UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mr. Leslie Davis,                                                    Civil No. 05-296 (PAM/RLE)

                    Plaintiff,

v.                                                      **MEMORANDUM AND ORDER**

United States Department of
Transportation; Federal Highway
Administration, Minnesota Division;
Hennepin County, Minnesota; and
Minnesota Department of Transportation,

                    Defendants.

---

This matter is before the Court on Defendants' Motions for Summary Judgment and Plaintiff's Motions for a Continuance and a Temporary Restraining Order. For the reasons that follow, Defendants' Motions are granted and Plaintiff's Motions are denied.

**BACKGROUND**

This lawsuit involves a construction project of a 1.74 mile segment of Lowry Avenue from Theodore Wirth Parkway to Interstate 94 in Minneapolis, Minnesota ("Project"). The Project is essentially an overhaul of the 1.74 mile route, which will involve more pedestrian-friendly accommodation and widening of Lowry Avenue to accommodate traffic, new bike lanes, parking, and streetscape improvements. The purposes of the Project include enhancing access to jobs through public transportation; effectively linking civic space through transit, bicycle, and pedestrian connections; and congregation of services around these transit centers. The Project includes grading, aggregate base, bituminous/concrete surfacing, concrete curb and gutter, storm sewer, concrete walk, medians, bike lanes, street lighting, street landscaping,

and traffic signals. It involves two phases: (1) from Girard Avenue to Interstate 94; and (2) from Theodore Wirth Parkway to Girard Avenue. In order to complete the Project, twenty-nine parcels of land need to be acquired in the first phase, and seven full parcels and ten partial parcels of land need to be acquired in the second phase. These parcels include vacant lots, commercial property, and residential housing units. (See Bowman Aff. Ex. A .) The total cost of the construction is $19,600,000, of which about $700,000 will come from federal funds. Hennepin County will pay the remainder.

As required under the National Environmental Policy Act ("NEPA"), Defendant Hennepin County prepared an Environmental Assessment ("EA") on the Project. Defendants United States Department of Transportation, Minnesota Division of the Federal Highway Administration, and Minnesota Department of Transportation evaluated the EA, and approved it in August 2004. The EA was published for public review and comment. Following this thirty-day comment period and a public hearing, Hennepin County prepared an Environmental Assessment Update ("EAU") to respond to issues raised. In the end, Hennepin County determined that an Environmental Impact Statement ("EIS") was not required, and instead requested that a Finding of No Significant Impact ("FONSI") be prepared. The FONSI was based on the analysis of the EA.

Plaintiff Leslie Davis contends that the Project is intended to ethically and economically "cleanse" the area of minorities and poor people. He sets forth four claims in his Amended Complaint, but essentially it is one claim for judicial review of an agency action. First, he claims that Defendants violated NEPA by not preparing an EIS. He further contends

that the EA was insufficient, and that Defendants' decisions were arbitrary and capricious, in violation of the Administrative Procedures Act ("APA"). Finally, Davis claims that Defendants failed to take a "hard look" at the Project. Davis seeks injunctive and declaratory relief. Specifically, he seeks an order compelling Defendants to prepare a comprehensive and adequate EIS and an injunction prohibiting any activity by Defendants until such EIS is completed.[1]

Defendants move for summary judgment on all claims. Davis moves for a continuance and a temporary restraining order to preclude development of the Project so that he may conduct discovery into other documents not included in the administrative record, which he believes will demonstrate that Defendants' decision was arbitrary and capricious.

**DISCUSSION**

**A.     Adequacy of the EA**

Davis contends that the EA does not adequately assess the Project's economic and ethnic impacts, as it pertains to relocation, property acquisition, and public transportation. He complains that Hennepin County misled the other governmental entities about the potential impacts of the Project. Thus, he contends that the EA was insufficient, and that Defendants acted arbitrarily and capriciously when it determined that an EIS was unnecessary.

NEPA requires that federal agencies prepare an EIS for every "major Federal action[]

---

[1] Initially, the Complaint also named as a defendant the Metropolitan Council. However, Davis voluntarily dismissed the Metropolitan Council in June 2005.

significantly affecting the quality of the human environment."[2]  42 U.S.C. § 4332(2)(C); see 42 U.S.C. §§ 4321-4370f.  However, under NEPA and its corresponding regulations, an agency may prepare an EA in lieu of an EIS, as long as the agency's proposed action does not clearly require an EIS.  40 C.F.R. § 1501.4(a)-(b); Dep't of Transp. v. Pub. Citizen, 541 U.S.752, 763-64 (2004).  If the agency concludes that an EIS is not required, then it must issue a FONSI that describes why the proposed action will not significantly impact the human environment.  40 C.F.R. §§ 1501.4(e), 1508.13.  An agency's decision not to prepare an EIS will be set aside only if its decision is arbitrary and capricious.  5 U.S.C. § 706(2)(A); Sierra Club v. U.S. Forest Serv., 46 F.3d 835, 838 (8th Cir. 1995).  The Court considers four factors to determine whether the agency's decision not to prepare an EIS is arbitrary and capricious: (1) whether the agency took a "hard look" at the problem; (2) whether the agency identified the relevant areas of environmental concern; (3) whether the agency made a convincing case that the impact was insignificant; and (4) if there was impact of true significance, whether the agency convincingly established that changes in the project sufficiently reduced it to a minimum.  Earth Protector, Inc. v. Jacobs, 993 F. Supp. 701, 706 (D. Minn. 1998) (Tunheim, J.) (citing Audubon Soc'y of Cent. Ark. v. Dailey, 977 F.2d 428, 434 (8th Cir. 1992)).  The Court must determine whether the agency made a clear error in judgment.  See Audubon Soc'y of Cent. Ark., 977 F.2d at 434.

After careful review of the administrative record, the Court finds that Defendants'

---

[2] NEPA does not provide for judicial review, so Davis's claims are properly asserted under the APA.  Thus, the Court will evaluate Defendants' actions under the arbitrary and capricious standard.  5 U.S.C. § 702.

decision to prepare the EA in lieu of an EIS was not arbitrary and capricious. The EA is thorough and detailed, and addresses both the negative and positive aspects of the Project. It analyzes four alternatives for the Project, and evaluates the social, economic, and environmental impacts of the Project, and discusses these impacts in detail. (Bowman Aff. Ex. A at 6-12.) In particular, the EA details the concerns articulated by various residents and other citizens affected by the Project, which include issues such as relocation, property acquisition, transit options, and traffic. (Id. at 15-16.)

The EA also addresses "Environmental Justice," which requires the agency to identify and address human health or environmental effects of the Project on minority and low income populations. (Id. at 18-22.) This section evaluates the effects of property acquisition as well as the secondary impacts associated with the acquisition, including transportation problems and business and economical problems. (Id. at 20-21.) It further discusses potential mitigation or other modifications that could be made to the Project, inclusive with impacts on minorities and impoverished residents. (Id. at 21.) It further identifies the results of a resident survey and explains that all relocations will comply with federal law. (Id. at 22.) Finally, this section discusses the measures taken by Hennepin County to include the public in developing the Project plan. (Id. at 22.) The EA ultimately concludes that although the Project would impact elements of the human environment, these impacts would be insignificant, limited, and positive.

The EA also details the Project's plan for relocation. (Id. at 24-27.) It calculates how many residents, businesses, and other occupants would be affected by the Project. It also

contemplates financial ramifications and discusses community cohesiveness and grouping. (Id. at 27.) It concludes that although neighborhood businesses and residents would be affected by the Project, relocation opportunities would allow businesses to continue to serve the neighborhood and allow residents to financially remain in comparable locations. (Id. at 26-27.) If further concludes that the Project would neither disrupt the current neighborhood structure nor frustrate the continued efforts by non-profit foundations to increase neighborhood cohesiveness. (Id. at 27.)

In addition, the EA identifies the cumulative effects of the Project. (Id. at 28-29.) It explains that the proposed roadway project and proposed redevelopment "will provide economic benefits to corridor residents and businesses." (Id. at 29.) It also acknowledges that the Project may result in increased use of Lowry Avenue, increased transit ridership, increased demand on public utilities, and corresponding increased property values and increased property taxes. (Id.) However, because of the low residential density population, the EA concludes that these effects will be minimal. (Id.)

Finally, the EA clearly and specifically addresses the Project's impact on the human environment, particularly from an economic and minority point of view. The Project's location includes more minorities and economically challenged citizens, and thus it is inevitable that the Project will impact these groups. However, the EA concludes that the Project will provide greater benefit overall to the population surrounding the Project area. It further concludes that although the relocation efforts undoubtedly burden current residents, the availability of relocation housing is more than sufficient to allow these residents to

physically and economically stay in the neighborhood. In addition, it concludes that the Project will improve safety, traffic flow, transit opportunities, and the aesthetic nature of the Project area. Ultimately, it concludes that there is no significant environmental impact.

The final EA sufficiently and adequately addresses each of the issues and values about which Davis is concerned. The EA sufficiently demonstrates that Defendants took a "hard look" at the problem. It further identifies the areas of environmental concern and concludes that the impact of the Project on such concern is insignificant. Although Davis has consistently explained that he would make a different decision, Davis nevertheless fails to show that Defendants' decision did not flow from its premise. See Audubon Soc'y of Cent. Ark., 977 F.2d at 434 (the court "has the responsibility to verify that the agency's conclusion follows from the premises the agency relies on"). The Project will improve the Project area from both a functional and aesthetic perspective, while likewise improving safety. There is no evidence in the record that the Project's purpose involves improper motives including discrimination or any other kind of "cleansing." Davis simply fails to raise any substantial environmental issues that were omitted from the record. See Olmsted Citizens for a Better Cmty. v. United States, 793 F.2d 201, 204 (8th Cir. 1986). Accordingly, the Court finds that Defendants' decision to prepare an EA and issue a FONSI in lieu of an EIS was not arbitrary and capricious. Defendants are entitled to summary judgment on all claims.

**B.    Continuance and Injunction**

Davis contends that he needs a continuance and immediate injunction so that he may conduct his own discovery to supplement the administrative record so that the Court may

properly conclude that Defendants erred.

The Court's review of an agency decision "is confined to review of the administrative record compiled by the agency when it made the challenged decision." Earth Protector, Inc. v. Jacobs, 993 F. Supp. 701, 707 (D. Minn. 1998) (Tunheim, J.) (citing Fla. Power & Light Co. v. Lorion, 470 U.S. 729 (1985)). Although a court may allow "testimony of an explanatory nature" to "sort out and wade through the voluminous administrative record," Miss. Coalition for the Env't v. Corps of Eng'rs., 866 F.2d 1025, 1031 (8th Cir. 1985), it may not create a new record on which to base its findings. Earth Protector, Inc., 993 F. Supp. at 707. In this case, because the administrative record is relatively concise and because the Court is unpersuaded by Davis's arguments to supplement the record, the Court confines its review to the administrative record. Thus, Davis's Motion for a continuance to conduct discovery and supplement the record is denied.

Because the Court finds in favor of Defendants, Davis fails to show that he is likely to succeed on the merits, as required to prevail on a Motion for a Temporary Restraining Order. Moreover, Davis fails to show that he will suffer irreparable harm if the Project progresses. The Court is unpersuaded that the balance of harms favors Davis, and indeed, the record reveals that the public interest is greater served by the completion of the Project. Accordingly, the Court finds that Davis's Motion for Temporary Restraining is without merit. See Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981).

**CONCLUSION**

Defendants' decision to issue an EA and FONSI in lieu of an EIS is not arbitrary and

capricious, and accordingly, Defendants have satisfied their obligations under NEPA. Plaintiff's claim fail as a matter of law. Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Hennepin County's Motion for Summary Judgment (Clerk Doc. Nos. 46, 49) is **GRANTED**;

2. Defendants United States Department of Transportation's and Federal Highway Administration's Motion for Summary Judgment (Clerk Doc. No. 69) is **GRANTED**;

3. Defendant Minnesota Department of Transportation's Motion for Summary Judgment (Clerk Doc. No. 63) is **GRANTED**; and

4. Plaintiff's Motions for Continuance and Temporary Restraining Order (Clerk Doc. Nos. 79, 82) are **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: November 3, 2005

                 s/ Paul A. Magnuson
                 Paul A. Magnuson
                 United States District Court Judge